Thank you, you can be seated. Your Honor, if I could get five minutes for rebuttal. Okay. Moore, you can start whenever you want to. Thank you, Your Honor. May it please the Court, my name is James Moore and I represent the appellant Shane Cowley. Your Honor, what we're here primarily for is to address the issue of whether Mr. Cowley has shown that good cause sufficient to rebut the presumption of timeliness or otherwise shown manifest injustice in the denial of his petition for DNA testing at the District Court below. Judge, respectfully, we believe that that has been shown. It is no secret that, I'm sorry, that the applicant has shown that good cause as well as manifest injustice sufficient to overcome the presumption against timeliness because what Mr. Cowley has done, what the appellant has done, is he's shown new evidence that wasn't available previously until his investigator got involved in this case. And the most important element of that is that Mr. Ronnie Moore, the individual who was with the appellant on the night that Mr. Stone was robbed and murdered, has finally come forward and sworn out an affidavit stating to the effect that the appellant was with him robbing a car in Malden, West Virginia at the same time that Mr. Stone was being murdered and that, in fact, the appellant was innocent because he had nothing to do with that. What do you think our standard of review is in this case? What standard are we reviewing the District Court's determination that the presumption was not overridden? Judge, I believe that that would be a legal conclusion as a result. To the extent that I was able to find, there's not a lot of jurisprudence on this particular statute, but what I was able to find is that it's a de novo review because what we're talking about is a legal standard and not necessarily factual finding. The legal standard of what? We would decide if there was good cause or we would decide de novo as to good cause or de novo as to manifest injustice? That's correct. As I was saying, this newly discovered evidence, which shows that Mr. Cowley wasn't… Did he present evidence at his criminal trial that he had an alibi, that he was stealing this car, but they said, well, he could have had time after he stole the car to get over there? Yes, Your Honor. He did, in fact, testify at his trial. And at his trial, his defense was what we just said, that he was in Malden stealing a car, not robbing and killing Mr. Stone. But the difference, Judge, is that that was Mr. Cowley. That was the appellant testifying on his own without any corroborating evidence whatsoever that he was there. What this new evidence is, is that Mr. Moore has come forward. At the time of trial, Judge, he invoked his Fifth Amendment right not to testify. And so his testimony that is now before the court, is now out and in the open, wasn't available at the time. And the only reason it's even available now is that in October of 2013, Mr. Moore, I'm sorry, the appellant, by sheer happenstance, came into contact with the investigator who went around to West Virginia and found and secured the affidavit of Mr. Moore. And that is actually an important point, because what the court looked at below in deciding that the appellant had not met the required standard, was that it said, well, why didn't he find Ms. McComas? That was her name, Suzanne McComas. Why didn't he find her earlier? Why did he wait eight years from the enactment of the IPA before he went and found her? And judges, if you look at Ms. McComas' affidavit, which she filed and was part of the record below, she came into contact with the appellant after she's been donating her time to inmates to try and reduce their sentences and or overturn their convictions for the last seven years. Now, after seven years of donating her time, she happened, by, again, sheer happenstance, to come across an Internet posting that the appellant had placed on a website for inmates. And she took a look at his case, thought it was... I want to ask you a question about the standard of review. Certainly. The statute isn't of great clarity, in my opinion. It says the court shall order if the court finds. Finds is generally something we review for abuse of discretion. You understand? It's shall if the court, not if certain things exist, but if the court finds they exist. That sounds like the kind of thing that we review for abuse of discretion, the judge's findings. Well, Judge, in the one case that I was able to locate that specifically addressed the question of standard of review... Not a Fourth Circuit case, I think. It is not a Fourth Circuit case, that's correct. With that, it looks like it was the Second Circuit. Patera. Yes, Judge. With the Patera court... I understand that. They looked at it there, but I'm just asking you. It looks like we review what a district judge finds. This seems to me that this didn't fit neatly into de novo to me. It seems like we have to review the finding that the judge made. Well, Judge, if the facts alleged here had been contested... For example, if down below the government had said, well, Ms. McComas is making this up. She didn't do any of this. These affidavits are bogus, or something along those lines. And the court found that that was the case. And as a result, there was no... But the court found no good justice. No good cause and no manifest injustice. That's what the court found. Right. And what it did was it applied the facts that we presented to it. Said, look, if this is what the case is, these facts applied to this law, not enough. And what I believe Patera says is that when you do that, then there's no finding of fact. That's just a legal conclusion that the court made based on what facts were presented to it by the parties. And as a result, when it comes back up to this court, it's a de novo review because it's simply a legal... So you think it changes if the court... It wouldn't have to be contested. The court could just go, your witness said that. I don't believe him. I think that's true as well, Judge. So anytime that there's any issue about the facts, it shifts our standard of review from de novo to abuse of discretion? I think as far as... By the way, these are tough questions, I understand. I'm just asking your best take on it. Understood, Judge. And what I would say is that to the extent that the court makes a factual finding, then that's a much higher standard. But to the extent that it's a legal finding, then again, it's just a de novo review. So if the court is making a factual determination, even if, as in the scenario you described, the court has said, you know, I just don't believe this stuff, that's a factual finding. That's a much higher... I think it's a clear error, I believe, was the... So what I take it you mean is since there's no dispute in the facts here, that becomes a factual record. No questions to be asked about that. We just look at is that sufficient under the law. Yes. Okay, I got you. Now, again, getting back to the question of whether good cause or manifest injustice has been shown, what the court really focused on below was that the appellant didn't provide an explanation for why, again, he waited until October of 2013 for Ms. McComas to come along and start helping him out. And I think that a couple of points about that. The first and the most obvious point is that the appellant has been a federal prisoner, certainly since his conviction, but even before that. I believe in 1999 is when he was first placed into custody. And now, while, you know, The Fugitive was a thrilling movie, the fact is that prisoners aren't allowed to go out and try and prove their innocence. They're in prison. Now, the last time he had counsel appointed on his case was on his 2255 motion that he filed following his conviction. Now, that was filed before the IPA even came into existence. In fact, the last attorney appointed on his case was appointed in August, I believe, of 2004. Didn't the court below say that basically that his delay of eight years to file this motion is unexplained and there is an absence of any explanation as to why that delay occurred? Didn't the court say that? I think that's what the court said, Your Honor. No, I'm just asking you that first. Yes. Do you think the court was correct in saying that? No, Your Honor. Tell me why you disagree with the court on that. Certainly. I think that, in essence, what the court has done is it's – It has nothing to do with what the court's done. I'm asking about was there any explanation offered for the delay? Well, I think there was. I mean, in Ms. McComas's affidavit, she stated that she found him on an Internet website. I mean, I think it's clear from the record that it was just sheer happenstance. But this is not a question about Ms. McComas. It's about – is it Cowley? Yes, Mr. Cowley. Why Mr. Cowley was late. Well, Mr. Cowley – Didn't he offer an explanation? Well, I think he just didn't – I mean, I don't – there was nothing in the record that specifically stated – Wasn't he in jail? He is. And didn't that – his argument for the delay is that he was in jail. Well, I think that's part of the argument. But I think – But the court said there was no explanation offered for the delay. Well, I think – I thought your argument would be clear. The record's clear with one reason for it, at least one. You can talk about Ms. McComas, too. But he was in jail. Right. He wasn't free to go out and find people to help him. Exactly. And I think that, in essence, what the court has said is it's like – it would be analogous to a situation where a farmer files for an insurance claim because he's lost his crop, and the insurance company denies the claim because he didn't provide an explanation for why he failed to pick his apples before the lightning hit the tree. And I think that what we have is it's just – he's in jail, he's in prison. He has limited access to go find these people, to do these – to file these motions, limited ability to do that, and that – So everyone in jail has good cause? No, Your Honor. Absolutely not. And I want to make sure that it's clear that the reason that Mr. Cowley has good cause versus any other inmate who files his own motion, for example, in Booth's is a perfect example of somebody who has no business having this motion granted. But the difference is Mr. Cowley, especially with Ronnie Moore's affidavit, Ronnie Moore took the Fifth at the time of his trial, and that's been the status until he changed his decision and signed an affidavit in May of 2014 saying, I was with Shane Cowley when he was stealing a car in Malden, West Virginia, not robbing and murdering Jeffrey Stone. And because that information was never available, even if he'd had Ms. McComas before then, even if he'd had an attorney before then who was looking at it from an IPA standpoint, none of that was even available to Mr. Cowley to use as an argument prior to as it happened when he did. And so if you're looking at it from the standpoint of good cause or manifest injustice, I mean I think that in this case they're sort of related, but the reason that separates Mr. Cowley from your run-of-the-mill inmate is that it wasn't available. And when it became available, he used it. And I think it's unfair and unjust, manifestly so, to say that, well, it wasn't available before, you didn't use it, and now that you're finally using it, well, it's too late to go back and do that. Especially when you consider that this statute, the purpose of it isn't necessarily to set Mr. Cowley free because if this court were to reverse and remand back to district court with instructions to allow the DNA testing to go forward, he doesn't go free. He's not free immediately. His conviction isn't overturned. All that happens is a little bit more information may come out. Now, we think that that information will come out and will ultimately exonerate Mr. Cowley. It could well be that that doesn't happen. You get DNA testing that shows somebody else's DNA was on the property. That doesn't mean that your client wasn't there. Well, not necessarily, but it could be the case if, for example, the only witness to this case, the only witness to the actual robbery, Michael Stone, the decedent's son, he testified clearly there were two individuals. So we know there are two individuals. So if we get two hits for DNA, even if they're unknown individuals, then we know that it wasn't Mr. Cowley. If we get DNA from some of these other individuals that have been identified through the proceedings, Nord Hudson, Jr., or Wayne Overton-Pauley, if they're on there, someone who could tie this assault, this robbery and murder, to the Garrison Street crew, then I think that is extremely compelling. But ultimately, Your Honor, the question isn't is it definitive. The question is just whether the evidence that would come back would create a reasonable probability that Mr. Cowley is innocent. Would it be your position that if my investigator found a corroborating witness that either I didn't know about or didn't testify, then I would qualify for manifest injustice or good cause because your client did testify or there was evidence of the alibi, so this other witness is just a corroborating witness? Well, if you go past the timeliness standpoint and you have to find a corroborating witness, period. But I would say that if there was a corroborating witness who was unavailable at the time of trial, your investigator finds it, produces an affidavit, then ultimately, yes, that would be manifest injustice to not allow you to have that test done, especially if there's as much additional information already out there in the totality of the circumstances. Would that alone be enough, though? Would that alone be enough? In the right circumstance, I think it could. In the right circumstance, alone. In this case, I think it would be. Well, all this other stuff doesn't matter to your case. Well, it matters because it makes it better. No, no, no, no, I'm talking about, but it doesn't matter. It helps you, but it's not necessary in your case. Correct. Would a recanning witness five years later serve the same purpose? I think he could. I think I'm out of time. Okay, go ahead. May it please the Court, Eric Goes on behalf of the United States, this Court should affirm the District Court, the Court did not clearly err in denying defendants' untimely motion for random, unspecified evidence. Not only is defendants' motion eight years out of time, the Court held that it did not overcome the heightened standard they're required to overcome, which is to say manifest injustice. This Court is, you're correct, Your Honor, that this Court has not specifically ruled on the standard of review. We believe the standard of review as cited by both parties in the Pietra case is going to be one of a de novo review for the ultimate question of DNA testing but the District Court's findings, in fact, are clearly erroneous. They have to be clearly erroneous. In this case, Judge Kopenhaver entered a 19-page order individually analyzing the affidavits. This is the same judge, of course, that heard the trial, has heard the 2255, heard the second successive habeas, and has a pretty good handle on this case. When defendant says in claims up here, and this is something I want to get to immediately, defendant's motion on the record, page 20, is this motion is timely in that defendant's motion is not based solely on his own assertion of innocence, and after considering all relevant facts and circumstances surrounding the motion, a denial would result in manifest injustice. That's page 20 of the index. That's it. That's all that this defendant offered to Judge Kopenhaver to explain the eight-year absence. That's the evidence that the Court had. But the same question I asked, as I read it, the Court said that delay is unexplained, and in the absence of explanation concerning why, he's unable to show manifest justice. But didn't he show? Isn't that statement not correct? There's an absence of explanation. There is an explanation. He may not say it's enough, but, well, do you see what I mean? He offered at least that explanation. That may seem hyper-technical to you, but I'm concerned about it because what the district court said, I'm not sure is factually correct. We believe what the district court said is factually correct, and here's why. The defendant's explanation as to the delay focuses on evidence. Remember, we're here under a 3,600 analysis. They're saying there's some DNA test out there. They don't say what it is, but there's some evidence out there that they want to submit, and they believe that's going to show a reasonable probability. They've had that evidence the whole time. This is new evidence or evidence that's already in the record? This is evidence that's in the record. What they want to test is evidence that was not admitted at trial but has been known about since 2000. So it's not evidence in the record. Well, I mean physical evidence admitted into evidence as exhibits. No, Your Honor, had it been admitted into evidence, they wouldn't be eligible to test this at all. It seems like when we filed our response, they went through and picked out things that hadn't been admitted. This is not biological evidence, but they suggested, well, this may turn up DNA if this DNA does turn up on this evidence. There's a beer can and blood and latent fingerprints? Exactly, Your Honor, and that's not biological evidence. I mean, the Code of Federal Regulations would be. The blood would be, wouldn't it? I'm sorry, ma'am? Wouldn't the blood be? The blood would be. Of all the evidence they sought to test, that's probably where I feel like I'm on the weakest ice here, and that is to say the blood isn't biological evidence. I would point out the blood isn't consistent with their theory of the defense inasmuch as if there's a smear of blood on the exterior of the car. We're not sure what that shows. The eyewitness didn't say that the individuals were hurt or injured. It's not consistent with the statement of Overton Wayne Pauley. So the evidence that they proposed test is unspecified evidence. The 3600, the IPA, the Innocence Protection Act, requires them to identify with specificity the evidence that's going to show that's going to raise a reasonable probability, and it has to be biological evidence. Beer cans aren't biological evidence. But going back to your initial question, let me pull back around there. When the judge analyzed this, this is evidence that they've known about, the trial lawyer knew about, from the outset. So this isn't new evidence. What they're claiming is new evidence is actually also not reflected on the record. Okay. I don't understand all that. Just explain this to me very clearly. Yes, sir. Because I went back to the court, and the judge says, Mr. Cowley, this is a footnote, not footnote, Section 8. Mr. Cowley then waited almost eight years to the day to seek relief under the Innocence Protection Act. Now this is the next sentence. This unexplained and protracted delay is a salient fact in considering, as the statute requires, all relevant factors and circumstances. Then he goes on to say, in light of this delay and the absence of any explanation concerning why it occurred, Mr. Cowley is unable to show. That bothers me. Maybe it shouldn't. Maybe you're going to explain why it shouldn't. But it seems to me there is a delay. I'm with him on that. But that is unexplained. I know it's unexplained. It's explained because he's in jail and couldn't get to the resources, isn't it? Well, that's not even in the defendant's motion. It just says it's not a manifest injustice. It's a one-clause explanation. But I'm asking about the judge's order. I'm looking at the facts myself and looking at what the judge wrote. I mean, it may not make the difference to the outcome, but I'm asking you. He says unexplained delay. It's not unexplained, is it? I thought they explained it partly because he's in jail. But, Your Honor, even if he's in jail, he has access to this evidence. He has access to the ability. The Innocence Protection Act applies to people in jail. He can simply ask that this evidence be tested. He's had access to this evidence the whole time, and he's had counsel the whole time. In contrast to what was initially offered to the court, the court has last heard about his counsel this year in March. So you think that the unexpected and protracted delay is his delay in pursuing any remedy under IPA? Exactly, Your Honor, and that's exactly what the statute requires. It's his burden to pursue this. The history, the act, requires a very narrow focus of ten specific steps they have to overcome. But this has to be sought by the defendant. Within a certain time period. Within a certain time period, and then it shifts. So we're not hard-hearted here. If there's a presumption of timeliness, if they act seasonably in the court's words, if they don't act seasonably, there's a higher presumption. And higher presumption is manifest injustice. Incidentally, he's kind of slid in also good cause there, but that's not what was asserted here. There's no good cause. I mean, good cause is also listed in the statute. The court wound up ruling on both. But when the defendant claimed to explain his absence of time, at least initially in front of the court, he just simply said, manifest injustice. Again, in that one narrow clause. That's the information the court has to work with. But did the court know that he was in jail? Yes. Did the court know that there had been some time that he had been in jail before he was able to hook up with the investigator McComas? Did the court know that? Yes. The court analyzed each and every affidavit in this case. And the court had not only the familiarity of the background of this case, having heard the trial, but then why do you think the court said in the absence of any explanation concerning why the delay occurred? Why did the court say that? Your Honor, I don't presume to know Judge Kopenhaver's thoughts. I will just simply say, Let me ask you this. How is that consistent with the record and what the judge looked at? It's 100% consistent with what the defendant filed on page 20 in the appendix saying, The motion is timely, which was not true, in that defendant's motion is not based solely on his own assertion of innocence, and after considering all relevant facts and circumstances surrounding the motion, a denial would result in manifest injustice. That is the only explanation offered by defendant when this court had this to consider whether they overcame the high hurdle of manifest injustice. Clear. Unmistakable. Requires the opposite conclusion to be reached. So when the judge looks at, again, I don't want to try to crawl around and judge Kopenhaver's mind. Probably not worthy. But I can simply say, this sentence, paragraph 13, from their own motion, is the only explanation they give. They don't even, now if you attach to the affidavit, you do hear the back story about how they picked up. One other thing I'd like to clear up on the record. The statement that Ronnie Moore was not available at trial is correct. Ronnie Moore asserted his Fifth Amendment, but defendant is not telling you that there was a huge hearing at that trial where they tried to introduce a taped statement made to his investigator as possibly rising to 804B3. The judge considered this evidence, had both sides brief this during the trial to see if his unavailability could overcome the high hurdle that this court has set in bumpus. It's not available. The statement is completely, again, interest and corroborated. So this was actually ruled on. So to suggest that, well, now it's different because now we know what Ronnie Moore had to say is actually not correct. They knew what Ronnie Moore had to say or would have said at trial, but for the fact that he pled the Fifth. When we look at this case. So your point is, although he wasn't willing to testify, they knew what he would say if he testified. That's right. And to the extent that counsel for defendant at trial tried, like the Dickens, to get that statement in, he wanted to play that statement for the jury, and rightly so. Judge Copenhaver did a very sophisticated balancing test and said, this doesn't come in. This court considered that on appeal. That was the appellate issue that this court denied. It was denied in 2000. And again, that set it up for the 2255, the 3582, and then as recently as March of this year. So I'm a little incredulous to hear that defendant didn't have counsel when it seems like this case is sort of exhibit A as to the risk of a perfectly good statute, a statute that we support, that can if the hoops are identified. But mostly this is a successive 2255 couched as a 3600, and that's the danger when we look at these affidavits going through the case line by line. It's an attempt to retry without any explanation of how the specific evidence, which they didn't really get around to claiming, they just, again, in their original motion, they wanted to test everything, but how the specific evidence is going to show a reasonable probability that the defendant didn't commit this crime. In summary, Your Honor, we think the court did not clearly err in denying that it's untimely motion for that random testing of unspecified evidence. The motion is eight years untimely and did not overcome the high manifest injustice standard. Thank you. Your Honors, the first thing I wanted to address in rebuttal here is that this has been referred repeatedly as random unspecified evidence. It isn't random unspecified evidence. These were specifically what we were looking for, and we identified it in our reply, and then we also identified it again in our briefs, that we're looking to see if there's any DNA evidence from five spent shell casings that were collected at the scene, from four beer bottles also collected at the scene, from three sets of latent prints, from three articles of clothing that were recovered at the scene, and one bloodstain. And the manner in which these were recovered, it was attached as an exhibit to the government's response to our initial motion in the district court. But it makes clear that these are recovered in various areas that are consistent with Michael Stone's description of where these people were coming from when they attacked him, when they attacked him and his father. And I think that what we're trying to determine with this evidence, again, isn't some random things. We're trying to prove that Mr. Cowley's DNA will not be found on these things. And the only way to do that is to test the evidence. And so that's why we're here asking for it. So I would, again, say it's not random. But you've got to prove more than his is not on it. You've got to prove somebody else's. That's true. That's correct, Judge. If it came back and it was inconclusive, they couldn't say if anyone's, if there was no DNA or they couldn't tell whose DNA it was, then this wouldn't help Mr. Cowley. That's correct. That's what we're trying to determine. What I'm saying, though, is if we come back with two positive or even if they're unknown individuals, if they're not Mr. Cowley, then Mr. Cowley wasn't there committing this crime. Say that again? That's not necessarily so. Again, the testimony of Michael Stone is that there are two individuals. Michael Stone is the only individual who witnessed this case or who witnessed this crime happen. The son. I'm sorry? Yes, the son. Yes, yes. And the son stated that, again, there are two individuals. So what I'm saying is if we get two sets of DNA off of these cases, then while there may be some remote explanation out there for how two individuals, other than Mr. Cowley's DNA, appeared on these items at the scene of the crime, you know, when this crime is taking place, that, yes, there could be some other explanation for how Mr. Cowley was there brandishing a firearm, potentially there's two types of shells recovered, so he must have fired a firearm. And, you know, but his DNA is not there. Theoretically, I guess that could happen. But I think that the chances of that. How's DNA going to be on shells anyway? Well, I mean, you know, what we're hoping is just to see if something comes back, but presumably. I know. Yeah, that's what it sounds to me. It sounds to me like you're making a case that anybody could make, that anybody can make in any crime, just go, please check everything at the crime scene, and I hope my DNA doesn't show up on it, and if it doesn't, then I'm claiming innocence. But everybody can do that. Well, what we're looking for on the spent shell casing, again, I'm not a DNA expert, and to an extent this might require DNA expert testimony of whether or not. Oh, you think putting the shells in the weapon. Right, right. And we think that the assailants were the ones drinking these beer bottles. We think that they were the ones wearing these clothes, and we think it's their fingerprints. So that's where we think that there may be DNA evidence found on these items and why we're asking that it be tested. Why didn't he ask for that within the time period after the passage of the act? Well, as far as so we're asking from the time period of October 2004 through essentially 2009. There's a 60-month window there. And other than, again, Your Honor, that he was in prison pursuing other avenues of relief, remember at the time, at least up until 2006, his appeal on his 2255 motion was still pending. I think that he simply didn't know about it. Didn't know about what? This statute, the IPA. But he had counsel then for his appeal. Correct, who was appointed to represent him for an appeal of a 2255 motion not to examine all potential avenues of relief to then come and file an IPA. I know an ineffective assistance of counsel would have led him to this theory, wouldn't it? Ineffective assistance of counsel when? You're talking about he filed a 2255, 2254? Yes, I believe it was a 2255. That usually is ineffective assistance. Yeah, that was one of the basis, I believe, that he had alleged was that Mr. Klein, his trial counsel, had been ineffective. Right, so it seems to me this would have been a theory that would have been explored and determined whether or not his counsel was ineffective. Well, when he filed the 2255 petition, the IPA didn't exist yet. It came into effect on October 30th of 2004. I believe that was filed in 2002, the 2255 motion. So any unrepresented inmate can say, oh, I didn't know about it? Well, again, just saying I didn't know about it isn't going to be enough. And I have a corroborating witness. And just saying I have a corroborating witness isn't going to be enough. What I think takes it beyond I thought that's what you told me earlier, that it wouldn't be enough in this case. In this case, it would be enough. No, I said no, no, no. I said forget everything else. You said I'd like to have it in the case. I said is it necessary, and you went nope. It's correct, it's not necessary. That's my question to you. Well, I think that depending on who the corroborating witness is, what the circumstances surrounding it would be, what would ultimately determine whether or not that would be enough. Now, in this case, it is enough. We understand if somebody who's from Singapore and never left there gave an affidavit, that wouldn't count. But anybody that's in a capacity to have been near, know something about it, if they give an affidavit, that would be enough under your theory, I think. Well, I think if you had a direct eyewitness to either guilt or innocence, in this case, it's innocence. If you have a direct eyewitness. I don't want you to take too long. I would just follow up on her question. I don't know if maybe she has another question. You've answered it for me, I think. Well, Your Honors, I just wanted to leave the court with this statement from Bowes, which is the northern district of Mississippi, so insightfully stated. The purpose of, at the end of the day, the purpose of the IPA, is to permit collateral review of convictions through DNA testing, no matter how much time has transpired or what other deadlines have passed, a statute that seeks, within its narrow tailoring, justice itself. If the conditions are met. If the conditions are met. But, Judge, I think that the conditions are met here, and that justice itself requires that, at a minimum, we take a look and see what result we can get from this evidence. Thank you. Thank you. I'll ask the clerk to adjourn the court, and then we'll come down and reconvene. This honorable court will stand adjourned until tomorrow morning. God save the United States and this honorable court.
judges: William B. Traxler, Jr., Dennis W. Shedd, Elizabeth Kay Dillon